FILED
2015 Aug-05  PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **LARRY BARLOW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:14-BE-1808-E** |
| **DUPREE LOGISTICS, LLC** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case is before the court on "Plaintiff's Motion to Quash Subpoenas or, in the alternative, Motion for Protective Order." (Doc. 32). In that Order, the Plaintiff requests that the court prevent the Defendant from serving 25 subpoenas that it intends to serve upon the Plaintiff's medical providers, upon his employers before and after his job with the Defendant, and upon companies to whom he submitted a job application after his job with the Defendant. The Defendant filed an opposition to the motion and alternative motion. (Doc. 34). It noted, among other things, that the Plaintiff's request for protection is more appropriately characterized as a motion for protective order, given that the subpoenas are directed at third parties and have not yet been served on them.

The court agrees that the appropriate vehicle for challenging the unserved subpoenas in question is the motion for protective order. Accordingly, the court WILL DENY the motion to quash, and address the alternative motion for protective order. For the reasons stated in this Memorandum Opinion, the court WILL GRANT IN PART and DENY IN PART the motion for protective order.

I.  Legal Standard

As a preliminary matter, the court notes that Federal Rule of Civil Procedure 26 governs the scope of discovery.  The Rule permits "discovery regarding any non-privileged matter that is relevant to any party's claim or defense ... [or, upon court order,] any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  The term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).  The court further notes that it "has wide discretion in discovery matters."  *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1280 (11th Cir. 1998); *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including, among others: "(A) forbidding the disclosure or discovery; and (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . ."  Fed. R. Civ. P 26(c). Because the Plaintiff is the party seeking a protective order, he bears the burden of showing good cause for such protection, and he must meet this burden with a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."  *See, e.g., United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).[1]  "In addition to requiring good cause, the district court must 'balance the interests of those requesting the order'" in keeping the information

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

confidential against the other side's interest in obtaining the information for trial preparation and defense. *Ekokotu v. Federal Exp. Corp.*, 408 F. Appx 331, 336 (11th Cir. 2011) (quoting *McCarthy v. Barnett Bank,* 876 F.2d 89, 91 (11th Cir. 1989)); *see also Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985) (stating "While Rule 26(c) articulates a single [good cause] standard for ruling on a protective order ... the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule.").

## II.  Claims in the Case

As a background to addressing the subpoenas, the court first reviews the claims that the Plaintiff asserts in this case.  According to his complaint, the African American Plaintiff, Larry Barlow, was a truck driver who worked for Defendant Dupree Logistics, LLC from January 26, 2009 until his resignation on April 3, 2013.  Barlow asserts the following claims against his former employer: Count I – hostile work environment based on race, a claim brought pursuant to Tile VII, including failure to discipline Barlow's white supervisor who called him "boy," failure to discipline other white employees who were Barlow's subordinates and who exhibited flagrant disrespect for his authority, refusal to allow Barlow to discipline those subordinates, and failure to investigate and remedy safety issues and tampering with Barlow's vehicles, resulting in his forced resignation; Count II – constructive discharge; Count III – retaliation for complaining about discrimination and harassment based on race, a claim brought pursuant to Title VII.

In Barlow's responses to interrogatories, he states that he seeks lost wages ("I lost ... money during the time [I] was not employed and I am currently making about a dollar less than at Dupre[e]" which the Defendant characterizes in his opposition as demanding both back pay and front pay), punitive  damages,  and  compensatory  damages,  which  Barlow  explains  are  for  "insult,

embarrassment, threats, and fearm" but do not encompass any medical expenses. (Doc. 34-1, at 3).

Barlow resigned from Dupree on April 3, 2013, and, given the claims for hostile work environment leading to constructive discharge and retaliation, his claims place squarely at issue the resignation and the reason for it. Dupree argues that, because Barlow has given three different and arguably conflicting reasons for that resignation, Barlow's credibility is at issue, particularly his credibility when testifying about the reason for his resignation. Thus, Dupree further asserts that it is entitled to pursue discovery focusing on the reasons for his resignation, because that issue is relevant and material.

More specifically, Barlow's April 2013 resignation letter refers to "serious safety issues pertaining to both my truck and my personal safety" including "tampering incidents" with vehicles causing him fear as well as "verbally degrading incidents," all of which resulted in his "no longer feel[ing] safe." That letter fails to mention high blood pressure or any other current health issues. (Doc. 34-2). In his HR interview, recorded during Dupree's investigation of Barlow's allegations, Barlow expressed the safety concerns leading to his resignation differently, stating that he was "instructed by my doctor 'you need to find you another job'" because he has high blood pressure and his treatment at Dupree caused his blood pressure to rise. He explained: "So, you know when you've got management that's treating you other than professional, and then you have to deal with the safety issues. My blood pressure went to 202 over 101, you know, you can't drive nobody truck being dizzy and frustrated. So my only alternative that I took was to resign and go get medical attention." (Doc. 35); *see also* Def. Br., Doc. 34, at 2 (quoting from recording). In Barlow's October 2013 application for work at A & R Transport, he omitted altogether the safety and medical explanations for resignation, stating instead that he left Dupree because he "[t]ook another Job/Relocated to GA."

4

(Doc. 34-3, at 3).  The court cannot reconcile all three explanations for Barlow's resignation.

With that background in mind, the court will proceed to address the challenged subpoenas to determine whether Barlow has met his burden and also to balance the interests involved.

### III.  Discussion

The court notes that, in response to Barlow's objections to the subpoena requests it originally proposed,  Dupree revised those requests to narrow their scope, and Dupree has served neither the original nor the revised versions of those subpoenas.  Barlow continues to challenge the revised versions, and the parties await this court's rulings on them.

#### A.  Subpoenas Directed to Medical Providers

The revised wording of the subpoenas directed to Barlow's medical providers states as follows:

> A certified copy of all medical records, including, but not limited to, doctors'
> notes, nurses' notes, medication reports, Family & Medical Leave Act forms or
> documents, correspondence made or received by you, reports, consultation notes,
> x-ray reports, billing reports, HCFA-1450 or HCFA-1500 billing forms, all typed
> reports and medical records from any hospital, physical therapist, occupational
> therapist, or other medical provider, or evaluations and any other materials or
> documents concerning the diagnosis, treatment, evaluation, and/or prognosis
> relating to any medical care or other treatment concerning LARRY BARLOW,
> SSN # xxx-xx-5703, Date of Birth xx/xx/1968, from January 1, 2006 to the
> present.

(Doc. 32-1, at 20-26).   In an attempt to compromise, Dupree revised the original request  to reduce the years covered from open-ended to the request quoted above, beginning in 2006, which was three years before Barlow's employment with Dupree commenced.

Barlow argues that a protective order should issue because his medical records are irrelevant and immaterial given that  he is not alleging any medically-related claims and is not

seeking damages for medical conditions.  He acknowledges that, in an HR interview at Dupree, he mentioned his high blood pressure and also referred to his doctor's recommendation that he find another job, a reference that Barlow now characterizes as hearsay.  However, Barlow asserts that the primary focus of that HR interview was the hostile work environment and Dupree's failure to investigate his complaints, not his physical condition.  He also asserts that, although he is claiming compensatory damages for the "insult, embarrassment, threats, and fear," resulting from the hostile work environment, his medical records are not at issue because the emotional distress he is claiming is of the "garden variety" that did not result in medical treatment or a mental defect or condition.

Dupree responds that Barlow's medical condition is at issue for at least two reasons.  First, his medical condition is relevant to the reason(s) for his resignation.  Although he is claiming that the hostile work environment and retaliation caused him to resign, he also told Dupree that one of his physicians instructed him to resign because of blood pressure problems.  Barlow's answers to interrogatories listed doctors who treated him for blood pressure problems, one or two of whom temporarily excused him from work because of that condition; all but one of the medical providers to whom subpoenas are directed are those doctors Barlow listed as providing blood pressure treatment.  Second, Dupree claims that Barlow's medical condition is relevant because he is claiming compensatory damages for emotional distress and Dupree has a right to discovery regarding whether he mentioned such distress to his doctors and whether his medical records reflected any manifestations of that distress or mentioned other reasons for that distress.

The court agrees with Dupree that Barlow has placed his medical condition squarely at

6

issue, as relevant and material to his claim that the hostile work environment and retaliation at Dupree led to his constructive discharge, and to his claim for compensatory damages for emotional distress.

Barlow's statements about his high blood pressure and his doctor's instruction to resign raise issues that Dupree is entitled to explore about Barlow's health and its effect, if any, on his resignation. And, the court notes that Barlow's hearsay objection about his own reference to his doctor's instruction is not well-taken; obviously, Barlow's statements to his employer about the reason for his resignation are relevant and material to his claim that he was subjected to a hostile work environment that was so severe and pervasive he was forced to resign. In any event, his statements about his medical condition and his doctor's instruction mean that discovery of records about his medical condition before, during, and after his job with Dupree would be reasonably calculated to lead to admissible evidence: evidence that is relevant and material to show what effect, if any, his job had on his medical condition, including any statements in those records about his emotional state, and to reveal what instructions his doctor actually recorded in Barlow's medical records.

As to his claim for compensatory damages that include emotional distress, Barlow characterizes them as "garden variety," and argues that, because his emotional distress did not require medical treatment, no medical discovery is available. In so arguing, he cites *Chase v. Nova Southeastern University, Inc.,* a non-controlling decision from a district court in Florida, which discusses the psychotherapist-patient privilege. Barlow quotes a passage from *Chase* in which the district court concluded that the plaintiff did not waive the psychotherapist-patient privilege by seeking damages for mental anguish, noting, among other things, that the "Plaintiff

7

is not contending that his prior depression and anxiety was exacerbated by Defendant's termination of his employment."   2012 WL 1936082, at *4 (S.D. Fla. May 29, 2012).  In the case at bar, Barlow has not expressly raised the psychotherapist-patient privilege.[2]   In any event, as reflected in the HR interview recording and discussed below, Barlow has expressly raised the issue whether his blood pressure was exacerbated by the alleged hostile work environment and retaliatory treatment at Dupree.  In light of those differences, the court finds that the *Chase* decision is inapposite.

Regardless of how Barlow characterizes his compensatory damages for emotional distress, he expressly seeks damages for "insult, embarrassment, threats, and fear."  ( Ans. to Interr. Doc. 34-1, at 3; *see* Compl. Doc. 1, at 6 ¶ ¶ 55-56, stating that he was "constantly embarrassed and humiliated" and "was in constant fear for his safety.").  He also claims in the HR interview recording that the Dupree workplace caused him stress that affected his blood pressure, made him dizzy and frustrated, and made him feel unsafe.  Barlow can call these damages "garden variety" but, regardless of the label he pins on them, the court, in its discretion, finds that he has placed his physical health and mental state at issue.  Dupree is entitled to the discovery of medical records to determine if those records support the cause and extent of his alleged emotional distress and blood pressure problems and to determine whether they reflect other sources of stress, emotional distress, and matters affecting his blood pressure.  The court further finds that the subpoena directed at medical providers is reasonably calculated to lead to

---

[2] And, indeed, he should not rely on that privilege because it applies to confidential communications made in the course of diagnosis or treatment with a therapist; such a privilege does not apply to the medical records requested in the instant case based on the information provided to the court.  *See Jaffee v. Redmond,* 518 U.S. 1, 14-15 (1996).

such discovery, and thus, it is reasonable in scope. Barlow cites no controlling authority to the contrary.

Having found that the medical inquiry is reasonable in scope, given the materiality and relevancy of the inquiry, the court also finds that it is properly limited in time; the revised request calls for records dating back only three years before Barlow began working with Dupree and continuing to the present, a period that is reasonable to compare his medical condition before, during, and after his position with Dupree.  Thus, the court FINDS that Barlow failed to meet his burden of showing good cause for the protective order *unless* the balancing of the parties' interests is in favor of confidentiality.

The court considered Barlow's interests in the confidentiality of his medical condition and weighed them against Dupree's interests in discovery of information that Barlow has squarely placed at issue in this case.  The court, in its discretion, finds that the balance weighs in Dupree's favor as to the medical record request to Dupree's medical providers, particularly where a protective order is already in place (doc. 31) to protect Dupree's privacy and ensure that his private matters remain within the confines of this lawsuit.  Accordingly, the court DENIES Barlow's motion for a protective order as to those subpoenas.

### B.  Subpoenas Directed to Plaintiff's Employers before the Dupree Job

The revised subpoena directed at Barlow's employers before the Dupree job contains the following request:

> A certified copy of records regarding the employment or temporary employment of Larry Barlow, SSN #xxx-xx-5703, date of birth xx/xx/1968, including, applications, resumes, disciplinary information, termination files, medical and/or DOT examination files, FMLA files, EEOC Charges, complaints, investigation files, and lawsuits. (See Qualified HIPAA Protective Order entered by this Court on 2/19/15.)

9

(Doc. 32-1, at 3).  Defendant revised the original wording to narrow the scope so that the request no longer asked for such matters as the entire personnel file, attendance records, requests for leave, payroll records and W-2 statements, etc.  The new version also attaches the HIPAA Protective Order.

Barlow argues that this request remains overly broad and that asking for the records of previous employers, which he characterizes as wholly irrelevant, is a "fishing expedition." Dupree argues, on the other hand, that it has revised its request as a compromise to target the issues relevant to this employment discrimination case, such as Barlow's physical condition prior to his work at Dupree, given the issue about how the Dupree job affected his blood pressure; Barlow's credibility, given the three "different" reasons for resigning; and Dupree's after-acquired evidence defense.

The court agrees with Dupree that discovery of certain records of previous employers would be reasonably calculated to lead to relevant and material information.  For example, given Barlow's demand for damages for emotional distress and given his  statements to HR about the Dupree job's effect on his blood pressure, any records of previous employers likely to discuss Barlow's prior medical condition, including his high blood pressure, would be a reasonable request to determine whether his blood pressure problems were attributable to his treatment at Dupree.  Thus, the previous employer's medical files on Barlow, his DOT physicals, and FMLA files would be discoverable, *as long as they are limited in time to the three years prior to Barlow's job with Dupree, i.e., from 2006 until the Dupree job in January of 2009.*   The court notes that, as a commercial truck driver, Barlow was required to have DOT physicals periodically, and that high blood pressure is a potentially disqualifying factor that may prevent a

10

driver from receiving the DOT medical certification required to maintain a commercial drivers'

license.  *See* Medical Examination Report for Commercial Driver Fitness Determination, Doc.

34-7, at 3 & 5 (quoting 49 CFR § 391.41 entitled Physical Qualifications for Drivers and stating

in ¶ (b)(6): "Has no current clinical diagnosis of high blood pressure likely to interfere with his

ability to operate a commercial motor vehicle safely.").

 In addition, because Barlow has placed his mental state at issue, requesting compensatory

damages for "insult, embarrassment, threats, and fear," Barlow is entitled to discover

employment records with previous employers that may reflect upon Barlow's mental state, such

as disciplinary records, termination records, and EEOC Charges, complaints, investigations, and

lawsuits.  The court notes that one case,  *Lundberg v. Rogue Tavern,*  upon which Barlow heavily

relies for other legal principles*,* does not support Barlow's position on this issue.  Case No. 11-

CV-282-VEH (doc. 21, at 8). The court in *Lundberg* denied the plaintiff's request for a protective

order as to subpoenas requesting records from previous employers that might reflect her mental

state; the court explained that because the plaintiff had placed her emotional state in issue by

seeking damages for emotional distress,  "discovery of [ ] employment records [from the

plaintiff's previous employers] that might reflect upon [the plaintiff's] mental state is appropriate

under Rule 26."  *Id.*  The court finds that such employment records with previous employers is

reasonably calculated to lead to admissible evidence *as long as the discovery requests are limited*

*to employment records during the three years prior the Dupree position, i.e., 2006 until Barlow*

*began his Dupree job in January of 2009.*

 Further, given the varied and arguably conflicting reasons Barlow has provided for

resigning from Dupree, Barlow has already placed at issue the credibility of his reasons for filing

11

his EEOC charge against Dupree and resigning.  Because of those credibility issues, information

regarding any prior complaints of discrimination, depending on their nature, could well bear on

his credibility in the instant case.  The court finds that discovery of prior complaints of

discrimination and EEOC charges directed at former employers is reasonably calculated to lead

to admissible evidence but must be limited in time to the period from 2006 until Barlow began

the Dupree job in January of 2009.

However, the court cannot see how the discovery of Barlow's applications and resumes

submitted as part of job applications *prior to* his Dupree job is reasonably calculated to lead to

admissible evidence.

In sum, as to the proposed subpoenas to Barlow's employers before he began the Dupree

job on January 26, 2009, the court, in its discretion, FINDS as follows:

•   Barlow has met his burden of showing good cause for the protective order to the extent

    that the proposed subpoenas request applications and resumes and request records from a

    period before 2006; the court WILL GRANT the motion for a protective order covering

    such requests.

•   Barlow has failed to meet his burden to establish good cause for the protective order to

    the extent that the proposed subpoenas are limited to the period of 2006 through January

    26, 2009 and that they request disciplinary information, termination files, medical and/or

    DOT examination files, FMLA files, EEOC Charges, complaints, investigation files, and

    lawsuits.

 In light of that finding, as to the records for which a protective order will not issue, the court

next balances the parties' competing interests.  Although Barlow asserts that contacting other

employers represents harassment, annoyance, and embarrassment, contacting *previous* employers

would not interfere with any current employment relationship.  The court, in its discretion,

further FINDS that, given Barlow's placement of these matters at issue in this lawsuit and

Dupree's right to discover information reasonably calculated to lead to evidence enabling it to

address those matters and defend itself, the balance weighs in Dupree's favor.  Accordingly, the

court WILL DENY the motion for protective order as to the subpoenas directed at Barlow's

former employers to the extent that the proposed subpoenas are limited to the period of 2006

through January 26, 2009 and request disciplinary information, termination files, medical and/or

DOT examination files, FMLA files, EEOC Charges, complaints, investigation files, and

lawsuits.  The court WILL DIRECT Dupree to limit its subpoena requests accordingly.

### C.  Subpoenas Directed to Barlow's Subsequent Employers

The revised version of the proposed subpoenas directed to Barlow's employers

subsequent to his position at Dupree  reads as follows:

> A certified copy of records regarding the employment or temporary
> employment of Larry Barlow, SSN# xxx-xx-5703, Date of Birth
> xx/xx/1968, including, payroll records and W-2 statements, benefit
> information, applications, resumes, disciplinary information, termination
> files, medical and/or DOT examination files, FMLA files, EEOC Charges,
> complaints, investigation files, and lawsuits (See attached Qualified
> HIPAA Protective Order entered by this Court on 2/19/15).

(Doc. 32-1, at 2).  This version deletes many documents requested in the original version, which

listed *all* employment records, personnel file, references, notes from reference interviews,

evaluations or performance reviews, attendance records, requests for leave, and "any other

records" concerning Barlow's employment.  (Doc. 32-2, at 2-3).  The revised version also

attached the HIPAA protective order entered in the instant case.

13

Barlow argues that the only information from subsequent employers that is relevant is his compensation information to calculate damages; because he had already produced information about what subsequent employers paid him, he asserts that any further information from them is irrelevant and that Dupree intends to issue the subpoenas only to harass and embarrass him.

On the other hand, Dupree argues that it is entitled to what it characterizes as the narrowly tailored information sought in the subpoenas.  As to Barlow's subsequent compensation and mitigation of damages, Dupree asserts that the tax returns and check stubs Barlow has already produced provide *part* of the financial picture, but do not provide all of the information Dupree needs to evaluate backpay claims. Dupree argues that it would like to discover other financial information for the calculation, including "(1) Barlow's eligibility for raises, bonuses, and overtime; (2) available benefits; (3) company-sponsored retirement/investment plans; and (4) company-sponsored disability and health insurance, among others."  (Dupree Br., doc. 34, at 14); *see Nord v. U.S. Steel,* 758 F.2d 1462, 1470-71 (11th Cir. 1985) (stating that a defendant bears the burden to establish failure to mitigate).  The court agrees with Dupree that such additional compensation information is relevant and material to the issue of mitigation of damages.

As to Barlow's claim that Dupree constructively discharged him and, put another way, that  the company's  hostile work environment and retaliatory actions forced him to resign, Dupree argues that applications and resumes Barlow submitted to subsequent employers would normally contain Barlow's statements about why he left his Dupree job.  Given that Barlow told Dupree varying reasons for his resignation, the court finds that the  reasons he listed on subsequent job applications and resumes would be relevant and material to the claims in the instant case, and subpoenas requesting such information would be reasonably calculated to lead

14

to admissible evidence.

As to reports reflecting Barlow's medical and mental status, the discussion in the previous section regarding previous employers would apply as well to subsequent employers; Dupree is entitled to discover information about Barlow's blood pressure and mental status, after he left Dupree and worked for a different company, to compare his blood pressure and mental status at a different job.  Accordingly, the court agrees with Dupree that the requests to subsequent employers for Barlow's medical files, his DOT physicals, and FMLA files would be reasonably calculated to lead to admissible evidence.  Further, Dupree is entitled to  records that might reflect his mental state such as disciplinary records, termination records, and EEOC Charges, complaints, investigations, and lawsuits; while the court cannot say with certainty that those documents would definitely reflect on his mental state, it does find that such requests are reasonably calculated to lead to admissible evidence. The credibility issues related to the reasons Barlow gave for his resignation at Dupree provide an additional reason that information requested from subsequent employers about complaints, EEOC Charges, complaints, investigations, and lawsuits would be reasonably calculated to lead to admissible evidence.

In sum, the court, in its discretion,  FINDS that Barlow has failed to meet his burden of establishing good cause for granting a protective order covering the subpoena directed at his subsequent employers.  Having so found, the court next balances the parties' interests.  The court acknowledges Barlow's concerns that the subpoena could interfere with his current employment relationship and his interests in privacy and confidentiality.  However, Barlow has largely waived any privacy interest in the requested documents by filing this public lawsuit with the claims asserted and damages asserted, including emotional distress.  Further, the HIPAA protective

order, which the subpoena attaches, would ensure that the employers' release of information subject to the subpoena would also be subject to the protective order.   As to the effect on his current employment relationship, Barlow may well have a legitimate concern; however, he is the one who initiated the lawsuit asserting claims that Dupree has a right to defend and to engage in the discovery process to establish evidence in that defense.  Given the legitimate scope of the discovery sought, the court, its discretion, FINDS that the balance weighs in favor of Dupree's issuing the subpoenas to subsequent employers, including his current employer.  Accordingly, the motion for protective order is due to be DENIED as to subpoenas directed to subsequent employers.

### D.  Subpoenas Directed to Potential Employers

The subpoenas to be directed to Barlow's potential employers—i.e., those to whom Barlow applied for a job but who did not employ Barlow—contain the following request:

> A **certified** copy of [ ] applications, resumes, references, and notes from reference interviews, and offer letters and responses to the same concerning Larry Barlow, SSN xxx-xx-5703, Date of Birth xx/xx/1968.

(Doc. 32-1, at 15-19).  In his Amended Answers to Interrogatories, Barlow stated that he had applied  for various jobs at, but did not work for, the following companies after leaving Dupree: Precision Strip in Alabama, Averitt Express in Tennessee, Davis Transport in Alabama, Southeastern Freight Lines in Alabama, and A&R Logistics, Inc. in Alabama.  Dupree has prepared subpoenas to those companies with the above request, which Barlow challenges.

Because Barlow takes the position that the only information discoverable from any employers—previous, current, subsequent, or prospective—is wage information from subsequent employers for mitigation of damages, he argues that the information requested from potential

16

employers who did not hire him is an irrelevant fishing expedition.  Dupree disagrees, arguing that the information on applications and resumes would normally include a statement about why he left Dupree, which would be relevant and material to Barlow's claims regarding hostile work environment and retaliation leading to constructive discharge.  Further, Dupree claims that offers and responses to offers are relevant to the mitigation of damages.

As to the subpoena requests directed at companies to which Barlow submitted an employment application after leaving Dupree[3], the court, in its discretion, FINDS as follows:

• Barlow has met his burden of establishing good cause as to the request for "references" and "notes from reference interviews."  Dupree provides no explanation as to the relevance or materiality of those items and the court finds that those items are not reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, the court WILL GRANT the motion to the extent it covers the items of "references" and "notes from reference interviews" on such subpoena requests, and WILL DIRECT Dupree to limit the subpoena requests directed to such prospective employers accordingly, deleting the items "references" and "notes from reference interviews."

• Barlow has not met his burden of establishing good cause as to all other items requested on such subpoenas.

Given those rulings, the court next balances the interests of the parties before allowing the discovery to go forward on the challenged subpoenas so limited.  The court need not reiterate rulings and discussions set out previously in this Order that would apply as well to this subpoena

---

[3] The parties do not indicate that Dupree has any plans to serve subpoenas on companies who never employed Barlow but to which Barlow submitted a job application *before* he began employment at Dupree.  The court's findings here do not encompass or approve such a request.

category.  As the court has now limited the subpoena directed to prospective employers (deleting the items "references" and "reference interviews"),  the balance weighs in favor of Dupree. Accordingly, the court  WILL DENY the motion as to the following items listed on the subpoena:  applications, resumes, offer letters and responses to offer letters, all concerning Larry Barlow.

    E.  The Subpoena Directed to Poly Trucking, Inc.

The subpoena directed to Poly Trucking, Inc., a company that offered Barlow a job which he rejected[4], contains the following request:

> A **certified** copy of copy records regarding the employment and/or application for employment of Larry Barlow, SSN # xxx-xx-5703, Date of Birth xx/xx/1968, including applications, resumes, reference information, interview notes, offer letter and responses to the same.  If applicable, also produce payroll records and W-2 statements, benefit information, termination files, medical and/or DOT examination files, FMLA files, EEOC charges, complaints, investigation files and lawsuits.  (See attached Qualified HIPPA Protective Order entered by this Court on 2/19/2015.)

(Doc. 32-1, at 13).

Based on the information provided and the wording of the subpoena, the court sees no reason to treat Poly Trucking differently from other potential employers who did not employ Barlow, as discussed in section D. above.  As limited by the court, they both request information that may reasonably lead to the discovery of admissible evidence, especially information related to the mitigation of damages.  Accordingly, as to the subpoena directed to Poly Trucking, Inc.,

---

[4] Dupree's brief does not explain why it worded the Poly Trucking subpoena differently than those directed at other prospective employers, but his correspondence regarding the proposed subpoenas explains that Barlow received and rejected an offer from them.  The court must assume that Dupree was not convinced that Barlow did not work for Poly Trucking and included the same requests that it directed at companies that employed him.  The court notes that this information requested is relevant and material to the mitigation of damages issue.

the court, in its discretion, FINDS as follows:

•	Barlow has met his burden of establishing good cause as to the request for "reference information" so the court WILL GRANT the motion to the extent it covers that item and WILL DIRECT Dupree to limit the subpoena requests accordingly.

•	Barlow has not met his burden of establishing good cause as to all other items requested on the subpoena to Poly Trucking, Inc.

Given those rulings, the court next balances the interests of the parties before allowing the discovery to go forward on the challenged subpoenas so limited.  For the reasons stated in the preceding sections, which need not be reiterated here, the court FINDS that the balance weighs in favor of Dupree and WILL DENY the motion as all  items listed on the subpoena *except* the request for "reference information."

In light of these rulings, the court will enter, by separate order, a revised scheduling order and will set a new date for a status conference.

Dated this 5th  day of July, 2015.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE